PROVO STY, J.
R. B. Blanks sold a large tract of land to the Oak' Lumber Company, and agreed that for every acre of the land title whereto proved defective he was to pay $6 and “as further security for the payment of such damages” executed the note now sued on, “which said note is to be returned to the said Blanks upon the full performance of this agreement; otherwise it is to be collected and applied to the payment of the demands hereinabove set forth.”
*723 The note is not in favor of the Oak Lumber Company, but of W. K. Rideout, who was president of the Oak Lumber Company, and represented it in the said contract with Blanks.
The note reads:
“Oskosh, Wis., May 18, 1908.
“Ninety days after date, for value received, I promise to pay to W. K. Rideout or order, at the Union National Bank of Oskosh, five thousand ($5,000.00) dollars, with interest at 'the rate of 6 per cent, per annum until paid.
“R. B. Blanks.”
On the back of this note is the following:
“For value received I hereby guarantee the payment of the within note at maturity or any time thereafter, with interest at-per cent, per annum until paid, and agree to pay all costs or expenses paid or incurred in collecting the same, waiving demand of payment, protest, notice of protest, and notice) of nonpayment. [Signed] John P. Parker.”
The title to a sufficient number of acres proved defective to make up, at $6 per acre, an amount of $21,000; and, Blanks having died, this $21,000 was put down on the final account of his succession as being due to W. K. Rideout, and on this $21,000 a payment of $2,006 was made, its pro rata share in $19,-070 distributed among the ordinary creditors, the succession being insolvent.
The present suit is against John P. Parker as guarantor of the payment of said note, It having been filed more than five years after the maturity of the note (July 1916), the prescription of five years is pleaded. This plea was sustained below, and the suit dismissed.
Plaintiff contends that the note formed part of the $21,000 debt on the account of the succession of Blanks, and hence that part of said payment went on the note, and had the effect of interrupting prescription on the note, ■ since Blanks and Parker were obligors in solido on the note.
Since nothing prevents two contracts from being separate, although written on the same piece of paper, and since Parker does not promise to pay the debt, but merely guarantees the payment of the note, and since, moreover, this contract of Parker’s contains stipulations which are not contained in the note itself, and since it purports to have been entered into for some consideration received by Parker himself, and therefore independent of the consideration received by the maker of the note, wo might conclude that it was a separate and independent contract, and that therefore the obligation of Parker on it was several, and not solidary. But, waiving that point, it is very evident that ally payinent made on the $21,000 cduld not possibly be on the note, since the note was to be returned to the maker only “upon the full performance of” the contract, and was therefore to be security for the entire performance of the contract, or, in other words, to stand for. whatever balance might be due after deduction of all payments made by Blanks. I-Iad Blanks in person paid the entire $21,000 less a part thereof equal to the amount of the note, the note' would have stood for this unpaid balance, and no part of the payment could have been attributable to it; for under the express terms of the contract the note was to be security for the performance of the contract in full. The said payment was therefore not on the note.
We might stop here, but there is another reason why said payment cannot possibly have been on the note. At a time not stated — probably before maturity — the note was indorsed over to the Bank of Oshkosh, and was in the hands of that bank when the said payment was made; whereas neither the $21,000 nor the contract out of which it grew was ever transferred to that bank, as far as the record shows. Now, since the note *725 was transferred, and indeed “without recourse,” while the contract was not, the two evidently became completely divorced.
W. K. Rideout makes a strong effort in his testimony to connect them, but he admits having no personal knowledge in the matter. His testimony is manifestly based on mere inference and hearsay. Contra, the testimony is positive that the persons in charge of the administration of the succession of Blanks knew nothing of the note.
We may add that by the express terms of the contract the note was executed and delivered, not as evidencing the debt under the contract, but only “as further security for the payment” of any debt that might in the future arise under it, very much in the same way that sometimes mortgage paper is made for the purpose of being used as collateral security for some debt already created or to be created, and is pledged as such security, without itself representing any debt. Breaux’s Digest, p. 599, No. 18.
A case strictly analogous to the present is Lehman, Abraham & Co. v. Mahier’s Estate, 34 La. Ann. 319, where a note was held as “a continuing collateral security” for an open account; and letters referring to the open account were held not to have interrupted prescription on the note.
Another case illustrative of the separateness of the principal obligation from the security contract is Harrington v. Nichols, 7 La. Ann. 676.
Another analogous legal situation is presented by the tutor’s bond, which stands for whatever amount may be due on final settlement, and in the meantime does not represent any debt.
Judgment affirmed, with costs.
O’NIELL, J., concurs in the decree.
DAWKINS, J., recused.